JUSTICE ALBIN, dissenting.
Plaintiff received treatment and care at Chilton Memorial Hospital for serious medical illnesses, including a flesh-eating bacterial infection. Plaintiff's physician ordered a course of antibiotics to address her critical medical condition. Despite that order, health care professionals at Chilton failed to administer doses of the antibiotics for a period of time. No one at Chilton told the plaintiff-patient about this serious lapse in her treatment. The information, though not easy to find in plaintiff's 4500-page medical chart, was **258 released in discovery after plaintiff filed a medical malpractice lawsuit, which did not identify the missed doses.
Unlike the majority, I would make clear that the patient had a right to be told about the lapse in her treatment at the time it occurred and in a way that she reasonably could have understood. The patient's right to know is not dependent on her filing a medical malpractice lawsuit or requesting the information in a well-crafted interrogatory question. The patient's affirmative right to know is enshrined in the public policy of this State by laws passed by the Legislature.
In enacting the Patient Bill of Rights, the Legislature conferred on a patient admitted to a hospital the right to know "complete, current information concerning his diagnosis, treatment, and prognosis in terms he can reasonably be expected to understand." N.J.S.A. 26:2H-12.8(c). The Patient Safety Act, N.J.S.A. 26:2H-12.23 to -12.25c, must be reconciled with the Patient Bill of Rights, for both are part of a larger statutory scheme known as the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 to -26. The Patient Safety Act -- like the Patient Bill of Rights -- confers on a patient the right to know critical information about her care and treatment. To that end, the Patient Safety Act specifically provides that a health care facility must inform a patient that she has been "affected by a serious preventable adverse event ... no later than the end of the episode of care, or, if discovery occurs after the end of the episode of care, in a timely fashion." N.J.S.A. 26:2H-12.25(d) ; see also N.J.A.C. 8:43E-10.7(a) ("A health care facility shall ensure that a patient ... is informed of the following: (1) Any serious *439 preventable adverse event that affected the patient[.]").
The majority has written out of the statute this important patient right by declaring that a court is not empowered to order a health care facility to disclose to a patient that she has suffered a serious preventable adverse event. See ante at 246, 190 A.3d at 431 ("The Legislature inserted no role for a trial court to play in reviewing the [serious-preventable-adverse-event] determination **259 made by a patient safety committee of a health care facility."). In effect, the majority has made health care facilities the final judge of whether a patient has suffered a serious preventable adverse event. The majority offers no authority, statutory or case law, for sweeping away the right of judicial review -- the most elemental court function. Nor has the majority adequately explained why the Patient Bill of Rights does not stand as an independent basis for disclosure, whether an adverse event was serious and preventable or not. Neither the trial court nor the Appellate Division entertained any question about the role of judicial review in this process, even though the Appellate Division concluded that the trial court erred in its determination that a serious preventable adverse event occurred in this case.
I agree with the majority that "[p]laintiff was entitled to be informed of an adverse incident related to her care in defendants' response to discovery demands because such an incident was memorialized through various entries in her patient records." Ante at 256, 190 A.3d at 437; see N.J.A.C. 8:43G-15.2(e) ("Any adverse incident, including patient injuries, shall be documented in the patient's medical record."). However, plaintiff was entitled to that information, even if it had not been entered in her patient records as required by N.J.A.C. 8:43G-15.2(e), and even if she had not demanded the information in a medical malpractice lawsuit pursuant to the Patient Bill of Rights. The majority's crabbed interpretation of the Patient Safety Act erodes significant rights the Legislature conferred on patients.
In my view, sufficient credible evidence in the record supports both the trial court's conclusion that a serious preventable adverse event occurred and its order disclosing the information in redacted form. Under the Patient Safety Act, that information could not be directly used in the lawsuit because the information was generated through the self-critical-analysis process. N.J.S.A. 26:2H-12.25(g)(1). I agree with the majority that, pursuant to that Act, the health care facility waives the privilege only if it does not follow the self-critical-analysis procedures set forth in the statute. Ante at 247-48, 190 A.3d at 432. The trial court clearly erred in **260 finding that a health care facility waives the self-critical-analysis privilege if it acts "arbitrarily" by not disclosing information required by the Patient Safety Act. Even if the event was not serious and preventable, however, it certainly was adverse and subject to disclosure under the Patient Bill of Rights.[1]
Ultimately, by requiring the hospital to provide a forthright narrative in response to an interrogatory question, the majority's remedy will provide this plaintiff with easier access to critical patient information buried in mounds of discovery. But in the next case, and other cases, where the critical patient information is not released in discovery or made part of the patient's record, the majority, by its expansive reading of the privilege in the Patient Safety Act, may have diminished the patient's right to know.
*440 To be sure, the self-critical-analysis privilege in the Patient Safety Act plays an important role in fostering and encouraging candor among health care professionals and therefore in critiquing their performances and improving the delivery of medical services for all patients. The self-critical-analysis privilege will bar a plaintiff-patient from directly introducing disclosed information about her treatment and care, recorded pursuant to the Patient Safety Act, in a lawsuit against a hospital or health care professionals. N.J.S.A. 26:2H-12.25(g)(1). But the privilege does not render meaningless the Patient Bill of Rights and cannot justify withholding from the patient critical information about serious mistakes made during her treatment and care. See N.J.S.A. 26:2H-12.8(c). The Patient Safety Act should not be construed to extinguish the Patient Bill of Rights. The statutory scheme does not sacrifice the patient's right to know the truth about her medical treatment on the altar of the privilege.
The failure of the majority to give meaning to the fullness of the Patient Bill of Rights and the Patient Safety Act leaves me no choice but to respectfully dissent.

Nothing in the Patient Bill of Rights suggests that disclosed information about a patient's "diagnosis, treatment, and prognosis" is privileged.